IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRYMIRE HOME SERVICES, INC., | § | |
| AND WHITFIELD CAPITAL, LLC | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.  3:19-CV- |
| | § | 1938-B |
| LIBERTY MUTUAL INSURANCE | § | |
| CO. AND OHIO SECURITY | § | |
| INSURANCE CO. | § | |
| | § | |
| **Defendants,** | § | |

**DEFENDANT OHIO SECURITY INSURANCE COMPANY'S BRIEF IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

**TABLE OF CONTENTS** ...................................................................................... i

**TABLE OF AUTHORITIES** ................................................................................ ii

I.    **SUMMARY OF THE ARGUMENT** ............................................................... 1

II.   **SUMMARY JUDGMENT EVIDENCE** ......................................................... 2

III.  **STATEMENT OF UNDISPUTED FACTS** ................................................... 2

    **A. THE POLICY** ........................................................................................... 2

    **B. THE PROPERTY** ..................................................................................... 4

    **C. PRE-PURCHASE PROPERTY INSPECTION SHOWED
    EXISTING DAMAGE** ................................................................................ 5

    **D. PLAINTIFF'S CLAIM** ............................................................................ 7

IV.   **SUMMARY JUDGMENT STANDARD** ....................................................... 10

V.    **ARGUMENTS AND AUTHORITIES** .......................................................... 11

    A. **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON
    PLAINTIFFS' BREACH OF CONTRACT CLAIM BECAUSE
    PLAINTIFFS CANNOT SATISFY THEIR BURDEN TO SEGREGATE
    COVERED PERILS FROM UNCOVERED PERILS** ................................. 11

        1.   **Plaintiffs Have Not and Cannot Segregate the Covered and
        Uncovered Damages** ........................................................................ 12

    B. **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON
    PLAINTIFFS' BREACH OF CONTRACT CLAIM BECAUSE
    PLAINTIFFS CANNOT SATISFY THEIR BURDEN TO ESTABLISH
    THE REASONABLE AND NECESSARY COST TO REPAIR
    COVERED DAMAGES** ............................................................................. 16

    C. **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON
    PLAINTIFFS' CLAIMS FOR VIOLATIONS OF THE DTPA,
    CHAPTER 541 OF THE TEXAS INSURANCE CODE,
    AND COMMON LAW BAD FAITH** ......................................................... 18

        1.   **Plaintiffs Have Not Sustained An Injury Independent From
        the Policy; Therefore, Plaintiffs' Extra-Contractual Claims
        Must Be Dismissed** ........................................................................ 18

        2.   **There is No Evidence to Support Plaintiffs'
        Extra-Contractual Claims** .............................................................. 19

VI.   **CONCLUSION** ............................................................................................... 21

## TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*Banda v. Allstate Property and Casualty Insurance Company*
     No. 4:19-CV-3418, 2020 WL 3972537, at *5 (S.D. Tex. July 14, 2020)...............19

*Celotex Corp. v. Catrett*
     477 U.S. 317, 322 (1986)...............................................................10, 11

*Certain Underwriters at Lloyds of London v. Lowen Valley View, LLC*
     Civ. Action No. 3:16-cv-0465-B, 2017 WL 3115142 (N.D. Tex. July 7, 2017)
     *aff'd,* 892 F.3d 167 (5th Cir. 2018)...........................................14, 18

*Data Specialties, Inc. v. Transcontinental Inc. Co.*
     125 F.3d. 909, 911 (5th Cir. 1997.................................................12

*Hamilton Properties v. Am. Ins. Co.*
     Civil Action No. 3:12-CV-5046-B, 2014 WL 3055801 at *4 (N.D. Tex. July 7, 2014)
     *aff'd,* 643 Fed.Appx. 437 (5th Cir. April 14, 2016) (per curiam)...........12, 13, 18

*Hart v. Hairston*
     343 F.3d 762, 764 (5th Cir. 2003)..............................................10

*Latimer v. Smithkline & French Lab.*
     919 F.2d 301, 303 (5th Cir. 1990).............................................11

*Little v. Liquid Corp.*
     37 F.3d 1069, 1075 (5th Cir. 1994..............................................11

*Matsushia Elec. Indus. Co. v. Zenith Radio Corp.*
     475 U.S. 575, 585-87 (1986)..................................................11

*One Way Invs., Inc. v. Century Sur. Co.*
     No. 3:14-CV-2839-D, 2016 WL 5122124, at
     *2 (N.D. Tex. Sept. 21, 2016)...........................................14, 17, 18

*Partain v. Mid-Continent Specialty Ins. Services, Inc.*
     838 F.Supp.2d 547 (S.D. Tex. 2012)............................................21

*State Farm Fire & Cas. v. Gandy*
     925 S.W.2d. 696 (Tex. 1996)..................................................12

**PAGE**

*U.S. Fire Ins. Co. v. Matchoolian*
    583 S.W.2d 692, 694 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) ..12

*White v. Dietrich Metal Framing*
    No. CIV. A. 1:06-CV-554, 2007 WL 7050943, at *2 (E.D. Tex. Nov. 29, 2007 .........11


**STATE COURT CASES**

*Comsys Info. Tech. Servs.*
    130 S.W.3d at 198 .................................................................................12

*Crown Life Ins. Co. v. Casteel*
    22 S.W.3d 378 (Tex. 2000) ..................................................................20

*Ebby Halliday Real Estate, Inc. v. Murnan*
    916 S.W.2d 585, 589 (Tex. App.—Fort Worth 1996, writ denied) ..............17

*Employers Cas. Co. v. Block*
    744 S.W.2d 940, 944 (Tex.1988) .........................................................12

*Liberty Nat. Fire Ins. Co. v. Akin*
    927 S.W.2d 627, 629 (Tex. 1996) ........................................................18

*.Miller v. LandAmerica Lawyers Title of El Paso*
    362 S.W.3d 842, 845 (Tex.App.-El Paso 2012, no pet.) ...........................21

*Paschel v. Engle*, 2016 WL 4506298 at * 2
    (Tex. App.—Austin 2016, no pet.); ......................................................17

*Pjetrovic v. Home Depot*
    411 S.W.3d 639, 649 (Tex. App.—Texarkana 2013, no pet.) ....................17

*Progressive County Mutual Ins. Co. v. Boyd*
    177 S.W.3d 919, 922 (Tex. 2005) ........................................................18

*Provident Am. Ins. Co. v. Castaneda*
    988 S.W.2d 189, 200 n. 55 (Tex. 1998) ...............................................20

*RenCare, Ltd. v. United med. Res., Inc.*
    180 S.W.3d 160, 166 (Tex.App.—San Antonio 2005, no pet.) ..................21

*Republic Insurance v. Stoker*
    903 S.W.2d 338, 341 (Tex. 1995) .) ...............................................18, 19

**PAGE**

*Royal Globe Ins. Co. v. Bar Consultants, Inc.*
    577 S.W.2d 688, 694-95 (Tex. 1979) ...................................................................20

*Townsend v. State Farm Lloyds*
    1998 WL 724016, at *2 (Tex. App.—Houston [1st Dist.] Oct. 15, 1998, no pet) ........20

*Trenholm v. Ratcliff*
    646 S.W.2d 927, 930 (Tex. 1983) ...................................................................21

*Universe Life Ins. Co. v. Giles*
    950 S.W.2d 48, 55 (Tex. 1997) ...................................................................18

*Wallis v. United Sers. Auto Ass'n*
    2 S.W.3d 300, 302-03(Tex.App.—San Antonio, pet. denied) ...................................12

*Wortham Bros., Inc. v, Haffner*
    347 S.W.3d 356, 361 (Tex. App.—Eastland 2011, no pet.) ...................................17

*Wright v. Christian & Smith*
    950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.) ........................11

**U.S. STATUTES**
Fed. R. Civ. P. 56(c) ...................................................................10

## DEFENDANT OHIO SECURITY INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Ohio Security Insurance Company ("OSIC" or "Defendant") files this its Brief in Support of its Motion for Summary Judgment (the "Brief"), and respectfully shows the Court as follows:

## I.
## SUMMARY OF THE ARGUMENT

This lawsuit arises from a claim for storm damage to Plaintiffs' commercial property. Under Texas law, when covered and non-covered perils combine to create a loss, Plaintiffs are entitled to recover only that portion of the damage caused solely by the covered peril. The burden of segregating the damage attributable solely to the covered peril is a coverage issue for which Plaintiffs carry the burden of proof.  Because Plaintiffs cannot present evidence to apportion their damages between perils for which Defendant would have liability and perils for which it does not, Plaintiffs fail to raise a genuine issue of material fact of an essential element of their breach of contract claim.

Plaintiffs' breach of contract claim fails for another, independent reason. In order to recover for breach of an insurance contract, Plaintiffs bear the burden of proving that Defendant failed to pay the reasonable and necessary cost to repair covered damages. In order to meet this burden, Plaintiffs must reply on expert testimony.  However, as set forth in Defendant's Motion to Strike the Testimony of Plaintiff's Designated Experts Brady Sandlin and Keith Kaley (the "Motion to Strike") filed contemporaneously with Defendant's Motion for Summary Judgment, Plaintiffs' experts should be excluded from testifying for multiple reasons.  Without these experts, Plaintiffs cannot meet their burden to establish the reasonable and necessary cost to repair the alleged covered damages as a matter of law.

1

Because Plaintiffs' breach of contract cause of action fails as a matter of law, and because there is no injury independent of Plaintiffs' claim for policy benefits, Plaintiffs' extra-contractual claims cannot be sustained.  Additionally, Plaintiffs cannot produce any evidence in support of these claims. Defendant is therefore entitled to summary judgment on Plaintiffs' extra-contractual claims.

## II.
## SUMMARY JUDGMENT EVIDENCE

Defendant relies upon the following summary judgment evidence contained in the Appendix to its Brief:

Exhibit A:      Declaration of Emmitt Smith

     Exhibit A-1:   Certified copy of Policy No. BKS (19) 57 89 93 55
     Exhibit A-2:   Inspection photo sheet from OSIC's June 29, 2018 inspection
     Exhibit A-3:   Loss Report for OSIC's June 29, 2018 inspection
     Exhibit A-4:   OSIC's January 18, 2019 reservation of rights letter
     Exhibit A-5:   Haag Engineering Hail Damage Evaluation
     Exhibit A-6:   OSIC's March 18, 2019 coverage position letter

Exhibit B:      Deposition Upon Written Questions of Royal Indian LP

Exhibit C:      Deposition Upon Written Questions of Partner Engineering
Exhibit D:      Excerpts from Deposition Testimony of Jeff Ballard

Exhibit E:      Excerpts from Deposition Testimony of Brady Sandlin

## III.
## STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.      THE POLICY**

Defendant issued Policy No. BKS578993552 (the "Policy") to Plaintiffs Whitfield Capital, LLC ("Whitfield") and Frymire Home Services Inc. ("Frymire"). Appendix ("App") at 13-17, 25. The Policy is an "occurrence" policy, meaning that it covers property damage that occurs within the policy period, regardless of whether the claim is brought to the attention of the insured or made known to the insurer during the policy period.  In that regard, the Policy states:

*COMMERCIAL PROPERTY CONDITIONS*

. . .

*H.  POLICY PERIOD, COVERAGE TERRITORY*

    *Under this Coverage Part:*

      *1.  We cover loss or damage commencing:*

        *a.  During the policy period shown in the Declarations*

App at 167. As to the policy period, the Declarations page provides as follows: "POLICY PERIOD: From: 03/23/2018 To: 03/23/2019." App at 13.

The Policy covers "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." App at 140.  According to the Policy, "Covered Causes of Loss" means direct physical loss unless the loss is specifically excluded or limited. App at 177. The Policy also contains the following exclusions, limitations and definitions:

*B. Exclusions*

*2. We will not pay for loss or damage caused by or resulting from any of the following:*
*d. (1) Wear and tear,*

*But if an excluded cause of loss that is listed in 2.d.(1) through (J) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.*

*f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.*

*3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.*

*c. Faulty, inadequate or defective:*
*(4) Maintenance; of part or all of any property on or off the described premises.[1]*

---

[1] App at 179-181.

3

***

*C. Limitations*

*The following limitations apply to all policy forms and endorsements, unless otherwise stated:*
*1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.*
*c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:*

*(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or*
*(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.[2]*

***

*G. Definitions*

*2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft: or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.*

*c. Water damage means:*
*(1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam;[3]*

## B.   THE PROPERTY

The Policy covered a commercial office building[4] located at 2818 Satsuma Drive, Dallas, Texas 75299 (the "Property").  App at 14bank.  The Property was acquired by Whitfield in March of 2017 when it purchased Frymire out of bankruptcy.  App at 785-86.  The Property is a U-shaped

---

[2] App at 182-183

[3] APP at 187.

[4] A metal warehouse building at the property address owned by Whitfield was not scheduled on the declarations page of the Policy.  APP at 575.

office building, a portion of which is occupied by Frymire. App at 410. The roof of the office building is a low-slop, gravel-covered, asphalt built-up roof ("ABUR") system. App at 411. The ABUR membrane consisted of multiple plies of fiberglass reinforced roofing felt interspersed with hot-applied asphalt to form a composite membrane. *Id.* A hot asphalt flood-coat was applied to the membrane, and gravel was embedded in the flood-coat. *Id.* A small area (about 200-300 sq. ft.) of the roof, base flashings, and curb flashings were surfaced with a modified bitumen, single-ply membrane. *Id.* The membrane was surfaced with a blend of gray-colored granules. *Id.*

## C.  PRE-PURCHASE PROPERTY INSPECTION SHOWED EXISTING DAMAGE

In connection with the bankruptcy of the Property's prior owner, Royal Indian LP, its lender Capital One Bank had the Property appraised by Lowery Property Advisors ("Lowery"). App at 593.  Lowery's appraisal report, dated February 17, 2017, determined that the Property "displays immediate repairs and deferred maintenance for a reported cost of $8,250 to short term items and $336,480 for long term items." *Id*. Lowery's conclusions were based on a property condition report prepared by Partner Engineering and Science, Inc. ("Partner").  *Id*.

When Capital One retained Partner, it advised that "the roof is reported distressed with multiple leaks and possible storm damage. Roof access/observations are an important focus with this report."  App at 757.  Partner's report, dated February 14, 2017 and based on its February 8, 2017 inspection of the Property, describes roofing systems more than 45 years old with active leaks and significant deterioration. App at 717-18. More specifically, Partner's analysis of the roofing systems states:

> The BUR with gravel top roofing systems over the office / warehouse building appeared to be in fair overall condition. According to property management, the roofing membrane is the originally installed system from 1972. Based on our observations, the reported age appeared to be reasonable.
>
> Isolated areas of patching were noted. In addition, the BUR roofing surfaces were observed to be bleeding asphalt and significantly deteriorated. Based on EUL,

5

replacement of the flat roof membranes is anticipated during the evaluation period with an opinion of the cost for this work included in Table 2. In addition, two areas of significant roof leaks were reported and observed. Immediate repair of the reported and observed roof leaks is recommended, and an opinion of the cost for this work included in Table 1.

The seam metal panel roofing over the storage/warehouse building appeared to be in fair overall condition. According to property management, the roofing system is the originally installed system from 1959. Based on our observations, the reported age appeared to be reasonable.

The seam metal panel roofing were observed to have several areas of rusted surfaces and deteriorated paint areas. Based on EUL, painting and sectional replacement of the pitched seam metal panel roofing system is anticipated during the evaluation period with an opinion of the cost for this work included in Table 2.

According to the site escort, roof maintenance and repairs are conducted by a roofing contractor, on an as needed basis.

*Id*. Photographs contained in Partner's report confirm the poor condition of the roofing systems described above.

 

23. View of metal panel roof over the storage building with deteriorated paint and rusted areas

24. View of metal panel roof over the storage building with deteriorated paint and rusted areas

6


29. View of tar and gravel BUR over the office building


30. View of tar and gravel BUR over the office building


45.  View of stained ceiling tiles from active roof leaks in 2nd floor level of the office building


46.  View of stained ceiling tiles from active roof leaks in 2nd floor level of the office building

App at 738-39, 742. Importantly, Partner concluded that the roofing systems should be replaced within two years.  App at 706.  Less than two months after Partner issued its report, Whitfield acquired the Property. App at 786.

**D.    PLAINTIFFS' CLAIM**

Plaintiffs allege that "[o]n or about June 6, 2018, a severe thunderstorm producing large hail and damaging winds set upon the DFW area", damaging the Property. Plaintiffs' First Amended Complaint, Doc. No. 18, at ¶ 14.  On June 22, 2018, Plaintiffs' insurance agent reported

7

a claim to OSIC for this alleged damage.  *Id*. at ¶ 16.  The claim was assigned to adjuster Marques Alex ("Alex"), who inspected the Property on June 29, 2018. *Id*. at ¶ 14. Based on his inspection observations, Alex recommended covering damages to certain roof vents and roof accessories, as well as two small areas with standing seam metal coverings. App at 404-05.  Alex noted that these damages would be well below the $61,728.00 Policy deductible.  *Id*. Alex documented his inspection findings in his annotated inspection photo sheet (App 229-403) and his Loss Report. App at 404-05. Because Plaintiffs were retaining a public adjuster, Alex noted that he would engage an engineer to assist in the claim investigation once the public adjuster contacted him.  *Id*.

On or about January 16, 2019, Alex received a letter of representation from Plaintiffs' public adjuster Brady Sandlin ("Sandlin"), which Alex acknowledged in a January 18, 2019 reservation of rights letter.  App at 406-7.  Alex retained Haag Engineering ("Haag") and re-inspected the Property with Haag's Andrew Massingill, P.E., Sandlin and Plaintiffs' roofer Keith Kaley on January 29, 2019. App at 411.

Haag subsequently prepared a Hail Damage Evaluation report dated March 15, 2019. Haag's report states that the roofing systems "showed signs of long-term deterioration" and had been impacted by multiple storm events over the life of the Property.  App at 411-12.  Haag's report sets forth the following conclusions:

> 1. Physical evidence suggests small hail had recently fallen at the property; however, dents found in the metal surfaces at the site suggest larger hail in the more distant past.
>
> 2. Detailed inspection revealed hailstones lacked the impact energy to damage the ABUR membrane or the modified bitumen membrane. No repair is needed to address hailstone impact to the ABUR or mod-bit membranes.
>
> 3. Laboratory testing confirmed that there was no hail-caused damage to the asphalt builtup roofing systems.

8

4. Hail-caused dents were apparent in the metal roofing panels at the detached warehouse building. Dents were frequent, widespread, and have altered the appearance of the metal panels.

5. Dents have not compromised the water shedding capability or reduced the service life of the metal roofing panels at the detached warehouse. App at 416-17.

On March 18, 2019, OSIC issued a denial letter to Plaintiffs. *See* Plaintiffs' First Amended

Complaint, Doc. 18, at ¶ 20. The denial letter states in part:

THE CLAIM

Our first notice of loss was on 6/22/2018. It was reported that there was storm damage to the building.

Our investigation of your claim revealed the following relevant information:

The roof of your building was inspected on 6/29/2018 by Liberty Mutual Insurance and subsequently inspected by Haag Engineering on 1/29/2019. Our inspections found no storm created damage to the built-up asphalt roof surface of the main building. Our investigation did find hail damage on the roof of a 7,200 square foot metal building on the property. This building is not currently scheduled on your declarations page. Based on our investigation, the damage found on the metal building predates your policy's inception date. Our investigation found no reports of hail within the vicinity of the building during your policy period.

\*\*\*

APPLICATION OF POLICY

In an effort to alert you to the basis of the denial of coverage, we list below the grounds under which all aspects of the claim are not covered under the policy. It is our intent to incorporate by reference all of the terms of the policy through this denial of coverage letter. Based upon the information available to date, the grounds for the denial of coverage under the policy, or under applicable law, with respect to the claim, include, but are not limited to, the following:

No storm damage was observed to the built up asphalt roof system. Wear and tear damage was observed to the built up roof surfaces, including blistering, cracking, and marring. Your policy excludes wear and tear as a covered cause of loss, therefore no coverage is afforded for the damage resulting from interior leaking caused by the condition of wear and tear.

There was hail damage identified on the accessories of the main building including metal dormer panels, HVAC condenser coils, and cap flashing. As noted

9

previously, our investigation found no reports of hail within the vicinity of the building during your policy period.

Your policy excludes damage to interior of any building caused by or resulting from rain, whether driven by wind or not, unless the building has first sustained a covered cause of loss, therefore no coverage is afforded for any damage resulting from interior leaking caused by rain.

Your policy excludes damage to interior of any building caused by or resulting from continuous or repeated seepage or leakage of water, therefore no coverage is afforded for any damage resulting from interior leaking caused by continuous or repeated seepage of water.

If you believe there is additional information or circumstances that we didn't include in our evaluation or have any questions, please contact me using the information noted below. I'd be more than happy to discuss this matter with you.

Based on the above we find no coverage under the terms and conditions of your policy for the costs claimed in connection with your asserted claim and therefore deny your claim. In view of the absence of coverage, we make no comment relative to the amount of loss or damage but include those issues within the rights reserved.

App at 575-78.

A few months later, Plaintiffs filed suit against Defendant in the 44th Judicial District of Dallas County, Texas, which was removed to this Court on August 14, 2019. Plaintiffs' live Complaint asserts claims against Defendant for breach of contract, negligent and/or intentional misrepresentation, violations of the Texas Deceptive Trade Practices Act and Chapter 541 of the Texas Insurance Code, and common law bad faith. *See generally* Plaintiffs' First Amended Complaint, Doc. 18.

### IV.
### SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)(quoting a previous edition of Fed. R.

Civ. P. 56(c)); *see Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *see also* Fed. R. Civ. P. 56(c).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *See Matsushia Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 575, 585-87 (1986). However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the martial facts but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* At 586-87 (quoting Fed. R. Civ. P.56(e)).  *See Matsushita,* 475 U.S. at 587; *White v. Dietrich Metal Framing,* No. CIV. A. 1:06-CV-554, 2007 WL 7050943, at *2 (E.D. Tex. Nov. 29, 2007)(citing *Celotex Corp.*, 477 U.S. at 322 n. 3)(quoting Fed. R. Civ. P. 56(e)).

If the non-movant bears the burden of proof at trial (such as here), the summary judgment movant need not support its motion with evidence negating non-movant's case.  *See Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir. 1990).  Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994); *see also Celotex Corp.,* 477 U.S. at 317.

## V.
## ARGUMENTS AND AUTHORITIES

A.  **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF CONTRACT CLAIM BECAUSE PLAINTIFFS CANNOT SATISFY THEIR BURDEN TO SEGREGATE COVERED PERILS FROM UNCOVERED PERILS.**

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by defendant; and (4) damages to the plaintiff resulting from that breach.  *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.).  "For an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy." *Data Specialties, Inc. v. Transcontinental Inc. Co*., 125 F.3d

11

909, 911 (5th Cir. 1997) (citing *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex.1988), overruled in part on other grounds by *State Farm Fire & Cas. v. Gandy*, 925 S.W.2d. 696 (Tex. 1996)).  "An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy." *Block*, 744 S.W.2d at 944.

"Because the insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." *Wallis v. United Sers. Auto Ass'n*, 2 S.W.3d 300, 302-03 (Tex.App.—San Antonio, 1999, pet. denied); *see also Comsys Info. Tech. Servs.*, 130 S.W.3d at 198. And because allocation is central to the claim for coverage, an insured's failure to carry its burden of proof on allocation is fatal to the claim. *Hamilton Properties v. Am. Ins. Co.*, Civil Action No. 3:12-CV-5046-B, 2014 WL 3055801 at *4 (N.D. Tex. July 7, 2014), *aff'd*, 643 Fed.Appx. 437 (5th Cir. April 14, 2016) (per curiam); *Wallis*, 2 S.W.3d at 304 (affirming the judgment notwithstanding verdict because the evidence was not legally sufficient to support the jury's finding on the amount of damages caused solely by the covered peril); *U.S. Fire Ins. Co. v. Matchoolian*, 583 S.W.2d 692, 694 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) (reversing and rendering a take-nothing judgment where the insured did not attempt to segregate damage caused by the covered peril from the uncovered peril).

### 1. *Plaintiffs Have Not and Cannot Segregate the Covered and Uncovered Damages*

In the present matter, there is no genuine issue of material fact regarding Plaintiffs' failure, and inability, to segregate the damages caused by covered and uncovered perils (such as, among other things, wear and tear, lack of maintenance and storm-related damage outside the effective dates of the Policy), which is fatal to their claim.  *See Hamilton Properties*, WL 3055801, at *1. In *Hamilton Properties*, the applicable policy period was February 16, 2009 through September 24, 2009; the plaintiff observed damages in 2013 and claimed that it was the result of a hailstorm

in July of 2009. *Id.* at *1. In support of its summary judgment, the defendant insurer introduced "evidence to suggest that the damage to the plaintiff's roof and interior could have been the result of non-covered perils, such as a hailstorm from February 10, 2009 [before the Policy period] or lack of maintenance." *Id.* at *6. In response, the plaintiff introduced evidence tending to show "that the July Hailstorm contributed to the destruction of [Plaintiff's] roof": specifically, the plaintiff's expert testified that a hailstorm during the policy period "'impact-damaged' part of the 'building roof perimeter such that it 'ruptured the waterproofing skin of the cant element producing flow paths for the intrusion of water to the interior," as the plaintiff's neighbors and the property's caretaker submitted affidavits that established that the "July [2009] hailstorm was significant." *Id.* at *8. This evidence was insufficient, however, because it was "silent with respect to the condition of Plaintiffs' [property] either before or after the storm." *Id.* at *5. While that evidence might have shown "that the July Hailstorm contributed to the destruction of the roof," it simply did not establish "that the July Hailstorm was <u>the lone cause of the harm</u>." *Id.* (emphasis added). Ultimately, none of the plaintiff's evidence established "the July Hailstorm as the sole cause or distinguishes the damage it caused from other non-covered perils," and thus failed "to allocate damages between the July Hailstorm and these other risks." *Id.* at *7. As the Fifth Circuit explained, "At most, [the expert witness] claimed that he could show that the *current* damage to the property . . . can be *linked* to the July hailstorm." *Hamilton Properties*, 643 Fed.Appx. at 442. But this evidence did "nothing to enable a jury to segregate damages for only that property damage that occurred within the policy period." *Id.* Accordingly, the Fifth Circuit found that summary judgment was appropriate, holding that the plaintiff's "failure to provide evidence upon which a jury or court could segregate covered damages from uncovered damages is fatal to its claim." *Id.*

13

Judge Fitzwater granted summary judgment in favor of a commercial property insurer in a case where the plaintiff was unable to meet its burden to segregate the damages caused by covered and uncovered perils.  *See One Way Invs., Inc. v. Century Sur. Co.*, No. 3:14-CV-2839-D, 2016 WL 5122124, at *2 (N.D. Tex. Sept. 21, 2016).  In reaching his decision, Judge Fitzwater found that the plaintiff had "not introduced any evidence that would enable a reasonable jury to estimate the amount of damage or the proportionate part of damage caused by a covered cause—i.e., hail and wind."  *Id*.  The Court held:

> Even if the court were to consider the reports of A & L and Accord as timely proffered expert testimony, the reports only provide estimates of the cost to repair the Property and some evidence that the Property was damaged by hail. Neither report provides evidence from which a reasonable jury could allocate damage from wear and tear, poor construction, or any other causes, on the one hand, and allocate damage from wind and hail, on the other hand. Accordingly, because One Way has not created a genuine fact issue concerning whether its alleged damages are covered by the Policy, Century is entitled to summary judgment dismissing One Way's breach of contract claim.

*Id*.

More recently, this Court again considered the segregation of damages issue and granted summary judgment in favor of the property insurer in *Certain Underwriters at Lloyds of London v. Lowen Valley View, LLC,* Civ. Action No. 3:16-cv-0465-B, 2017 WL 3115142 (N.D. Tex. July 7, 2017) *aff'd,* 892 F.3d 167 (5th Cir. 2018).  This Court held that the insurer provided competent summary judgment evidence that a non-covered peril, multiple hail events outside the coverage period, could have caused the insured's property damage. *Id.* at *9. As such, the insured had the burden establishing evidence to allow the jury to segregate covered losses from non-covered losses. *Id.* However, the insured provided no evidence of the condition of the roofs at issue either immediate before or immediately after the storm. *Id.* Thus, this Court concluded that the insured had failed to provide any evidence that would allow the trier of fact to segregate covered losses from non-covered losses, and summary judgment was granted in the insurer's favor. *Id.*

14

As discussed above, Defendant is not liable for any loss caused by wear and tear, seepage, deterioration or faulty/inadequate workmanship and maintenance, as all are excluded from coverage by the Policy. App at 179-181. There is no genuine dispute that the roof of the Property suffered from severe wear and tear and deterioration prior to the claimed date of loss. In fact, the Partner Engineering report prepared just prior to Plaintiffs' 2017 purchase of the Property found that the roofing systems were in such poor condition that they needed to be replaced within 2 years. App at 706, 717-18. Additionally, the Haag engineer who inspected the Property in connection with the subject claim observed long-term deterioration of the roofing systems and evidence of hail damage from prior storm events. App at 411-12.

Importantly, Plaintiffs' own expert Brady Sandlin admitted in his deposition that he is unable to segregate between covered and uncovered perils.  For example, Sandlin testified that he had no way of determining whether the hail damage he claims to have observed at the Property was caused on the claimed date of loss or a prior hail event. App at 771. While Plaintiffs assert a claim for interior damage, Sandlin did not include this damage in his report as he could not ascertain if this damage pre-dated the date of loss.  App at 763-64. Sandlin confirmed that the older HVAC units had more hail dings than the newer HVAC units. App at 769. With respect to prior hail storms, Sandlin testified as follows:

> Q. Do you believe it's possible that the damage you were looking at could have been from a storm other than the June 6, 2018, storm?
>
> A. Yeah, there is a possibility of that.[5]
>
> ***
>
> Q. Do you believe it's possible any of the damages you were looking at the Frymire property could have been caused by this earlier storm on March 23, 2016?

---

[5] App at 765-66.

A. It's possible.[6]

\*\*\*

Q. And in fact, would you agree that it's certainly possible and, based on the age of this building probably probable, that some of the hail damage you were looking at was caused by a different storm than the June 5 and 6, 2018, storm?

I have no way of knowing that.

Q. Do you agree it's possible?

A. Possible.[7]

\*\*\*

Q. Did you do anything to try to segregate out the damage that you believe occurred from the June 5 and 6, 2018 storm from damages that possibly occurred at an earlier date?

A. No.

Q. Could you do that if asked?

A. I'm not sure.[8]

In light of the foregoing undisputed evidence, Plaintiffs cannot reasonably argue that they can meet their burden to segregate between covered and uncovered perils. The testimony of Plaintiffs' own expert seals their fate because it confirms that other, non-covered perils could have contributed to Plaintiffs' alleged loss.  Absent evidence to apportion their damages between an event for which Defendant would have liability and damage for which it does not, Plaintiffs fail to provide evidence sufficient to raise a genuine issue of material fact. As a matter of law, therefore, Plaintiffs' breach of contract claim must fail.

---

[6] App at 768.

[7] App at 770-71.

[8] App at 771.

B.   **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF CONTRACT CLAIM BECAUSE PLAINTIFFS CANNOT SATISFY THEIR BURDEN TO ESTABLISH THE REASONABLE AND NECESSARY COST TO REPAIR COVERED DAMAGES**

Plaintiffs' breach of contract claim fails for the independent reason that they cannot establish the reasonable and necessary cost of repairs to the Property.  A party seeking to recover damages measured by the cost of repair must present competent evidence of the reasonable value of the repairs and that the repairs are necessary. *Paschel v. Engle*, 2016 WL 4506298 at * 2 (Tex. App.—Austin 2016, no pet.); *One Way Invs., Inc. v. Century Sur. Co.*, 2016 WL 5122124, at *3 (citing *Ebby Halliday Real Estate, Inc. v. Murnan*, 916 S.W.2d 585, 589 (Tex. App.—Fort Worth 1996, writ denied)).  Evidence pertaining to the necessity and reasonableness of repair costs, particularly of a commercial roof, requires expert testimony. *See Pjetrovic v. Home Depot*, 411 S.W.3d 639, 649 (Tex. App.—Texarkana 2013, no pet.) ("The average property owner, however, will not be familiar with the cost to repair that property, especially when the repairs are of a technical or specialized nature."); *Wortham Bros., Inc. v, Haffner*, 347 S.W.3d 356, 361 (Tex. App.—Eastland 2011, no pet.) (requiring expert testimony in support of cost of repair and holding property owner's rule "does not extend to the reasonable cost of repairing the owner's property particularly when those repairs are of a technical or specialized nature.").

On February 29, 2020, Plaintiffs served Defendant with Plaintiffs' Expert Designation [Doc. 20] ("Plaintiffs' Designation"), designating Sandlin and Keith Kaley ("Kaley") as purported experts. *See* Plaintiffs' Designation at p. 2. Plaintiffs designated each individual "to provide expert testimony regarding the damage to the roof, the cause of the damage to the roof and the costs to replace the roof." *Id.* However, as set forth in Defendant's Motion to Strike filed contemporaneously with Defendant's Motion for Summary Judgment, Plaintiffs' experts should be excluded from testifying for multiple reasons.  Without testimony from these experts, Plaintiffs cannot meet their burden to establish the reasonable and necessary cost to repair the alleged

17

covered damages as a matter of law. For this additional reason, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

C.   **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR VIOLATIONS OF THE DTPA, CHAPTER 541 OF THE TEXAS INSURANCE CODE, AND COMMON LAW BAD FAITH.**

   1.   ***Plaintiffs Have Not Sustained An Injury Independent From the Policy; Therefore, Plaintiffs' Extra-Contractual Claims Must Be Dismissed.***

Plaintiffs cannot maintain a bad faith cause of action where there is no evidence to prove a covered loss or establish a breach of the Policy. The longstanding rule of the Texas Supreme Court is "that in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (citing *Republic Insurance v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). Where an insurer conclusively establishes that an insured does not have a bad faith claim, the insurer also conclusively disproves those Insurance Code and DTPA claims that are based on the same theory underlying the bad faith claim. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997) (stating that the court was "unif[ying] the common law and statutory standards for bad faith"); *Progressive County Mutual Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005). In fact, the great weight of authority holds that these types of extra-contractual claims must be dismissed when the insured's contract claim is dismissed due to a failure to segregate damages. *See, e.g., Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC.*, No. 3:16-CV-0465-B, 2017 WL3115142, at *19 (N.D. Tex. July 21, 2017) (finding that because the breach of contract claim failed as a matter of law and the defendant did not provide evidence of injury independent from the policy, summary judgment on the Chapter 541 and 542 counterclaims should be granted); *One Way Invs., Inc. v. Century Sur. Co.*, No. 3:14-CV-2839-D, 2016 WL 5122124, at *2 (N.D. Tex. Sept. 21, 2016) (dismissing claims for breach of the duty of good faith and fair dealing and

for violations of Sections 541 and 542 of the Texas Insurance Code); *Hamilton Props. v. Am. Ins. Co.*, Civil Action No. 3:12-CV-5046-B, 2014 WL 3055801 at *4 (N.D. Tex. July 7, 2014), *aff'd*, 643 Fed.Appx. 437 (5th Cir. April 14, 2016) (per curiam) (dismissing extra-contractual claims for violation of the Texas Deceptive Trade Practices Act, Sections 541 and 542 of the Texas Insurance Code, and the duty of good faith and fair dealing).

The only potential "out" for Plaintiffs is the exception to this rule which does not apply. An exception may exist when, in denying the claim, the insurer commits an act "so extreme" that it would cause injury independent of the policy claim. *Stoker*, 903 S.W.2d at 341. However, as Judge Hanen observed a few months ago, the Supreme Court of Texas has yet to find an independent injury in the twenty-three years since it recognized the theoretical possibility of such an injury. *Banda v. Allstate Property and Casualty Insurance Company,* No. 4:19-CV-3418, 2020 WL 3972537, at *5 (S.D. Tex. July 14, 2020).

Here, Plaintiffs have not alleged and cannot produced any evidence to raise a genuine issue of fact that they suffered an injury independent of the Policy claim. Therefore, Plaintiffs' extra-contractual claims – whether pled as alleged violations of the Insurance Code and the DTPA, common law bad faith, or a post-loss misrepresentation – all fail as a matter of law, and Defendant is entitled to summary judgment on these claims.

   2.   ***There is No Evidence to Support Plaintiffs' Extra-Contractual Claims.***

Additionally, there is no evidence to support any of the elements of a bad faith claim. First, there is no evidence that there is an absence of a reasonable basis for denying payment of benefits under the Policy. Second, there is no evidence that Defendant knew or should have known that there was not a reasonable basis for denying the claim. There is simply no evidence that this is anything more than a bona fide dispute over liability under the Policy. Accordingly, Defendant is

entitled to a no evidence summary judgment on Plaintiffs' breach of the duty of good faith and fair dealing claim.

There is also no evidence that Defendant engaged in an unfair settlement act or practice that violated chapter 541, subchapter B, of the Insurance Code, as alleged by Plaintiffs, nor is there is any evidence that any act or practice by Defendant was a producing cause of actual damages to Plaintiffs. Accordingly, Defendant is entitled to a no evidence summary judgment on Plaintiff's unfair settlement practice claims.

There is also no evidence that Defendant engaged in unfair and/or deceptive acts and/or practices prohibited by section 17.46(b)(5), (7) or (12) of the Texas Business and Commerce Code, as alleged by Plaintiffs, nor is there is any evidence that any act or practice by Defendant was a producing cause of actual damages to Plaintiffs. Accordingly, Defendant is entitled to a no evidence summary judgment on these DTPA claims. Plaintiffs' remaining claims for violations of the DTPA are based on use or employment of an act or practice in violation of the chapter 541 of Texas Insurance Code, and therefore fail for the same reasons discussed above.

Plaintiffs' claims for negligent/intentional misrepresentation are based on Defendant's conduct after the loss. Post-loss misrepresentations do not give rise to DTPA, Insurance Code or common-law liability. *See Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 200 n. 55 (Tex. 1998), overruled on other grounds by *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000) (citing *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 694-95 (Tex. 1979)). Statements made in connection with post-loss investigation or handling of a claim can never be actionable misrepresentations because, unlike affirmative representations of coverage, an insured does not rely or "take action" to its detriment based on those statements. *See Townsend v. State Farm Lloyds*, 1998 WL 724016, at *2 (Tex. App.—Houston [1st Dist.] Oct. 15, 1998, no pet)

("These claims [of misrepresentation] are separate and distinct from appellants' claims based on breach of the insurance contract or wrongful denial of coverage. An assertion that the insurance policy has characteristics and involves rights which the carrier is failing to recognize appropriately 'is properly characterized as a breach of contract, not a misrepresentation.'" *Partain v. Mid-Continent Specialty Ins. Services, Inc*., 838 F.Supp.2d 547 (S.D. Tex. 2012).

The elements of negligent misrepresentation are: (1) defendant's representation to a plaintiff in the course of defendant's business or in a transaction in which the defendant had an interest; (2) defendant's providing false information for the guidance of others; (3) defendant's failure to exercise reasonable care or competence in obtaining or communicating information; (4) plaintiff's justifiable reliance on defendant's representation; and (5) defendant's negligent misrepresentation proximately causing the plaintiff's injury. *Miller v. LandAmerica Lawyers Title of El Paso,* 362 S.W.3d 842, 845 (Tex.App.-El Paso 2012, no pet.). Intentional misrepresentation is essentially fraud. *RenCare, Ltd. v. United med. Res., Inc.,* 180 S.W.3d 160, 166 (Tex.App.—San Antonio 2005, no pet.) The elements of fraud are: (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in justifiable reliance upon it; and (6) that he thereby suffered injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex. 1983). Plaintiffs have no evidence supporting any of these elements. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' negligent/intentional misrepresentation claim.

## VI.
## CONCLUSION

Plaintiffs have not met their burden to segregate out damage attributable to a covered peril from damage attributable to non-covered perils. Plaintiffs also cannot satisfy their burden to

establish the reasonable and necessary cost to repair their alleged covered damages. Therefore, Plaintiffs' breach of contract claim fails as a matter of law.  Because Plaintiffs' breach of contract cause of action fails, and because there is no injury independent of the Policy, Plaintiffs' extra-contractual claims cannot be sustained as a matter of law. There is also no evidence to support Plaintiffs' extra-contractual claims.  Accordingly, Defendant respectfully requests that the Court grant summary judgment in its favor on all of Plaintiffs' claims; award Defendant its costs of court; and grant all other relief, general or special, at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

*/s/ Michael C. Diksa*
MARK D. TILLMAN
State Bar No. 00794742
MICHAEL DIKSA
State Bar No. 24012531
SALINA A. KABANI
State Bar No. 24067484

**TILLMAN BATCHELOR LLP**
5605 N. MacArthur Blvd., Suite 560
Irving, Texas 75038
Telephone: (214) 492-5720
Facsimile: (214) 492-5721
mark.tillman@tb-llp.com
mike.diksa@tb-llp.com
salina.kabani@tb-llp.com

**ATTORNEYS FOR DEFENDANT
OHIO SECURITY INSURANCE
COMPANY**

22

<u>**CERTIFICATE OF SERVICE**</u>

In accordance with the FEDERAL RULES OF CIVIL PROCEDURE, on September ___, 2020, a true and correct copy of the above and foregoing instrument was served ***via facsimile or electronic service*** upon:

<u>**ATTORNEYS FOR PLAINTIFFS**</u>
Jay K. Gray
State Bar N0. 08324050
Andrew A. Bergman
State Bar No. 02196300
4514 Travis Street
Travis Walk, Suite 300
Dallas, Texas 75205
214-528-2444 (Telephone)
214-599-0602 (fax)
gray@bergmangray.com
bergman@abergmanlaw.com


*/s/ Michael C. Diksa*
MICHAEL C.  DIKSA