IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRYMIRE HOME SERVICES, INC. and | § | |
| WHITFIELD CAPITAL, LLC | § | |
| *Plaintiffs,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:19-CV-01938-B |
| | § | |
| LIBERTY MUTUAL INSURANCE CO. and | § | |
| OHIO SECURITY INSURANCE CO. | § | |
| *Defendants.* | § | |

**PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE TO
DEFENDANT'S MOTION TO STRIKE THE TESTIMONY OF
PLAINTIFFS' DESIGNATED EXPERTS BRADY SANDLIN AND KEITH KALEY**

1

Table of Contents

**INTRODUCTION** ........................................................................................................... 4
**ARGUMENT AND AUTHORITIES** .......................................................................... 5
    A.    Sandlin ................................................................................................................ 5
    B.    **Sandlin's Testimony is Relevant** ............................................................. 10
    C.    **Keith Kaley** ................................................................................................. 15
**CONCLUSION** ............................................................................................................ 15
**CERTIFICATE OF SERVICE** ................................................................................ 17

## Cases

*Crowe v. Bolduc*, 334 F.3d 124 (1st Cir. 2003) ............................................................................ 8

*DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465 (8th Cir. 2000) ..................................................... 8

*Dorsey v. Greene*, 922 So.2d 121 (Ala. Civ. App. 2005) .............................................................. 8

*JAW The Pointe, L.L.C.,* 406 S.W.3d 597 (Tex. 2015).................................................... 11,12, & 13

*Kaplan v. Hanover Ins. Co.*, 2009 Mass. App. Div. 185, 2009 WL 3069004, at *2 (Mass. A.D. 2009) ........................................................................................................................................ 8

*Morris v. Rhode Island Hospital*, CA.No.13-304-ML (D.C. Ri. July 7, 2014) ............................. 8

*Tagatz v. Marquette Univ*., 861 F.2d 1040 (7th Cir. 1988) ........................................................... 7

*United States v. Cresta* , 825 F.2d 538 (1st Cir.1987) .................................................................. 8

*Utica Nat'l Ins. Co. v. American Ind. Co*., 141 S.W.3d 198 (Tex. 2004)..................... 11, 12, & 13

## Statutes

Tex. Ins. Code §4102 *et seq*. (2005)............................................................................................. 6

## Other Authorities

Opinion No. 533, Professional Ethics Committee for the State Bar of Texas (August 2004) ........................................................................................................................................ 6,7

Texas Pattern Jury Charge 101.57 comment .................................................................... 12, 13

Texas Pattern Jury Charge 101.57. ................................................................................... 10, 11

## Rules

Fed. R. Civ. P. 26(a)(2)(B). ......................................................................................................... 15

Tex. Disciplinary R. Prof. Conduct 3.04 (1989).................................................................... 5

COME NOW Frymire Home Services, Inc. (referred to as "Plaintiff Frymire") and Whitfield Capital, LLC (referred to as "Plaintiff Whitfield") (collectively referred to as "Plaintiffs") and hereby respond to Defendant Ohio Security Insurance Company's (referred to as "Defendant Ohio Security") Motion to Strike the Testimony of Plaintiff's Designated Experts Brady Sandlin and Keith Kaley and for would respectfully show the Court as follows:

## INTRODUCTION

2. Plaintiffs are named insureds under a commercial property insurance policy purchased through Defendant Ohio Security. Plaintiffs made a claim for damage to the property caused by a hail and wind storm. Defendant Ohio Security has denied the claim. Plaintiffs have alleged causes of action for 1) breach of the insurance contract; 2) common law misrepresentations; 3) violations of the Texas Insurance Code; 4) violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"); and, 5) breach of the duty of good faith and fair dealing.

3. Plaintiffs have designated, but not retained, Brady Sandlin ("Sandlin") and Keith Kaley ("Kaley") as witnesses expected to give testimony that could be considered expert in nature. Neither witness was retained by Plaintiffs' counsel or Plaintiffs specifically to provide expert testimony nor is either witness being compensated to provide expert testimony in this case. Both witnesses were employed by Plaintiffs prior to litigation being anticipated.

4. Regardless, Defendant now moves to strike Sandlin on two bases: 1) a "financial interest in the outcome;" and, 2) his testimony is unreliable. Defendant moves to strike Kaley for failure to provide a report despite him not being a retained expert.

4

# ARGUMENT AND AUTHORITIES

### A. Sandlin

5. Defendant moves to strike Sandlin as an expert witness based on a "financial outcome in the litigation." The basis of Defendant's argument is that Sandlin has a contingency interest in the outcome of this Lawsuit" and, therefore, serious questions are raised about the integrity of his testimony. In support of its position, Defendant relies heavily upon Texas Disciplinary Rule 3.04 that prohibit a lawyer from falsifying evidence though the payment of a witness contingent upon the content of the testimony of the witness or the outcome of the case. TEX. DISCIPLINARY R. PROF. CONDUCT 3.04 (1989).

6. Sandlin is a licensed public adjuster in the State of Texas. (APP 3). Sandlin was retained to assist with the hail and windstorm damage by Plaintiffs prior to the litigation. Sandlin entered into a contract with the insureds wherein he would be paid ten percent (10%) of the recovery on the insurance claim. (APP 3) Sandlin was not referred to Plaintiff by Plaintiffs' Counsel or any attorney. (APP 3) Sandlin did not refer Plaintiffs to Plaintiffs' Counsel nor any other attorney. (APP 3-4) Sandlin has not worked with Plaintiffs' Counsel before (APP 4). Sandlin does not have any other involvement with Plaintiffs' Counsel other than the present lawsuit. (APP 4) Sandlin was hired by Plaintiffs independent of any lawyer or law firm merely to assist with the handling of the insurance claim. (APP 4)

7. Sandlin's contract with Plaintiffs does not provide him with an interest in the outcome in any litigation. (APP 4) Sandlin's contract only provides Sandlin a financial interest in the insurance claim. Sandlin's fee and contract are governed by Texas State law. (APP 4)

8. Sandlin is not being paid by Plaintiffs or Plaintiffs' Counsel to render expert testimony. (APP 4). Sandlin is not being paid to testify in this litigation. (APP 4). Sandlin is not being paid

for his time spent studying to prepare for his testimony. (APP 4) Sandlin is not being paid for "showing up at trial and giving testimony." .Sandlin's only interest in the litigation is through his derivate interest in the underlying insurance claim. (APP 4)

9.      In other words, Sandlin's integrity, is a lot less questionable than most expert witnesses seen by the courts these days.

10.     In a fairly recent development, Texas law now provides that a public adjuster may be retained by an insured to assist with handling of an insurance claim. TEX. INS. CODE §4102 *et seq*. (2005). Texas law also regulates the compensation a public adjuster may charge an insured. *Id*. at §4102.104. Texas law and public policy specifically allow a public adjuster to enter into a contract with an insured in exchange for a fee of up to ten percent (10%) of the insurance claim. *Id*. at §4102.104(a).

11.     In support of its argument, Defendant cites Texas Ethics Opinion No. 533 which is based on Rule 3.04 of the Texas Disciplinary Rules of Professional Conduct that prohibits a lawyer from paying, offering to pay or acquiescing in the offering or payment of the testimony of a witness contingent upon the testimony of the witness or the outcome of the case. Tex. DISCIPLINARY R. PROFESSIONAL CONDUCT 3.04. However, the facts underlying the Opinion No. 533 are distinguishable from the present case. On Opinion No. 533, the ethics committee was presented with a factual scenario where a property tax appraisal company had solicited a property owner to assist the property owner in having his property evaluation lowered. Opinion No. 533, PROFESSIONAL ETHICS COMMITTEE FOR THE STATE BAR OF TEXAS (August 2004). The appraisal company entered into a contingency contract with the property owner for a twelve percent (12%) fee on any tax savings. (*Id*.). Additionally, in the event a lawsuit was necessary, the appraisal company would receive fifty percent (50%) of all tax amounts saved by the property owner as a

result of the litigation. (*Id*.). Further, the appraisal company agreed to pay all expenses associated with the litigation, including court costs, appraisals, engineering reports, expert witness fees and legal fees. (*Id*.). The appraisal company would then provide an employee of the appraisal company to provide expert testimony for the lawyer that it retained. (*Id*.). Under those facts the Ethics Committee opined that "[a]n expert witness who is paid based on a <u>percentage of the recovery in a litigated matter</u> would have an obvious stake in the outcome of the litigation, which is inconsistent with an expert's role." (*Id*.)(emphasis added). The Ethics Committee concluded that a payment to the expert's company would be the same result as a payment to the expert. (*Id*.).

12.     In the present case, Sandlin does not have a contract that provides an increase in his fee if the underlying claim goes into litigation. (APP 4). Sandlin has not agreed to pay the litigation expenses, including the legal fees. (APP 4) Sandlin is not driving the litigation. Sandlin was retained before the litigation, independent of any law firm involvement. (APP 4)

13.     Further, Rule 3.04 of the Texas Disciplinary Rules of Professional Conduct pertains to a lawyer paying, offering to pay or acquiescing in the offer to pay a witness based on the testimony provided or the outcome of the case. Tex. DISCIPLINARY R. PROFESSIONAL CONDUCT 3.04. Rule 3.04 is a rule of professional conduct rather than a rule regarding admissibility of evidence. *See Tagatz v. Marquette Univ*., 861 F.2d 1040, 1042 (7th Cir. 1988) (rule against contingent fee expert witnesses is a rule of professional conduct rather than of admissibility of evidence).

14.     Sandlin has not been specially retained to provide expert testimony. (APP 4) Sandlin is a fact witness whose testimony and involvement are expert in nature. Sandlin was hired by the Insured long before any lawyers were involved or any litigation anticipated. (APP 4). There was not a lawyer involved in the negotiation of the fee between the Insured and Sandlin. (APP 4) Further, when the offer was made by Sandlin to the Insured there was not litigation. (APP 4)

15. Sandlin's involvement is more akin to a medical provider operating under a Letter of Protection. A medical provider operating under a letter of protection has a "financial interest in the outcome;" nevertheless, a medical provider's testimony should not be excluded on this basis. *See DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000) (explaining that bias of an expert witness is the province of the jury and can usually be addressed through effective cross-examination); *Dorsey v. Greene*, 922 So.2d 121, 128 (Ala. Civ. App. 2005) (holding it was legal error to disregard testimony of treating chiropractor based on financial interest of unpaid bills); *Kaplan v. Hanover Ins. Co.*, 2009 Mass. App. Div. 185, 2009 WL 3069004, at *2 (Mass. A.D. 2009) (explaining that total exclusion of treating chiropractor testimony was unnecessary because he could be cross-examined regarding his "financial stake in the outcome of the case" ).

16. Obviously, any potential interest or bias a witness may have should be subject to vigorous cross-examination. *United States v. Cresta* , 825 F.2d 538, 546 (1st Cir.1987)(considering the interaction between "permitted testimony of a witness paid in a contingent fee basis and opportunity to cross-examine"). As explained by the First Circuit in *United States v. Cresta*, "[w]hile the risk of perjury is recognized, courts have chosen to rely upon cross-examination to ferret out any false testimony." 825 F.2d at 546; *See also Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003).

17. Plaintiffs do not argue that a fact-finder should not be made aware of Sandlin's fee. To ensure the veracity of the witness "the jury must be informed of the exact nature of the contingency agreement; the defense counsel must be permitted to cross-examine the witness about the agreement; and the jury must be specifically instructed to weigh the witness' testimony with care." *Id.* at 133.

18. In *Morris v. Rhode Island Hospital*, CA.No.13-304-ML (D.C. Ri. July 7, 2014)(memo.

8

opinion), the court was asked to disqualify Plaintiff's expert witness on the nursing standard of care. The expert was a nurse with a law license that was employed as an associate with her father's law firm hired by the plaintiff under a contingency fee contract. (*Id.*). The associate attorney had authored an expert report that the defendant had breached the nursing standard of care. (*Id.*). Defendant moved to have the expert precluded from testifying because of her contingency interest in the outcome of the case. (*Id.*) The court recognized that Rhode Island had a state bar rule that prohibited a witness from having a financial interest in the outcome of the case; nevertheless, determined that cross-examination, not preclusion, was the remedy available to opposing counsel. (*Id.*).

19.    Perhaps the point can best be made by the circumstances that would have arisen had Sandlin's testimony in any way been unfavorable to Plaintiffs. For example, consider the following scenario. Plaintiffs hire Sandlin under the same terms to assist in their hail and wind damage claim. Sandlin inspects the property and finds the damage was not caused by hail. Plaintiffs then retain another consulting firm for a second opinion. The second firm finds the damage was covered. A lawsuit entails. Defendants discover the involvement of Sandlin and attempt to offer Sandlin's findings in contravention of the second firm. Would Plaintiffs then be able to strike Sandlin's testimony because of his contract providing him an interest in the underlying insurance claim?

20.    Thus, Sandlin's form of pay, as with any expert witness, should be subject to cross-examination by opposing counsel. However, when the witness as a public adjuster enters into a state sanctioned contract providing for a contingency interest in the underlying insurance claim, not the lawsuit, and is not retained or paid in any way additionally for his testimony during the case, preclusion does not further any public policy objective. The jury can decide the integrity of Sandlin's testimony.

### B.     Sandlin's Testimony is Relevant

21.     Defendant does not challenge Sandlin's qualifications as an expert. Defendant moves to strike Sandlin's testimony as unreliable because Sandlin testified that the roof "possibly" had some prior damage to it from a different hailstorm and the roof "possibly" had some wear and tear damage. Defendant challenges Sandlin's testimony as unreliable for failure to attribute 100% of the roof's current condition to the hail and windstorm that forms the basis of Plaintiffs' insurance claim. In a related point, Defendant argues that Sandlin's testimony is unreliable because Sandlin failed to segregate any pre-existing condition that was not covered from the damage caused by the hail and windstorm. Defendant argues that because Sandlin was unable to completely rule out a possibility that the roof had pre-existing damage from another storm, or from wear and tear, that Sandlin's testimony is therefore not relevant because it does not aid the jury.

22.     These arguments by Defendant misconstrue Texas law regarding insurance contracts. Defendant's position improperly shifts of the burden of proof under Texas law and the specific insurance contract at issue. First, prior damage or pre-existing damage is not a concurrent cause of the loss. Second, the insurance policy in this case does not contain an "anti-concurrent-cause" clause. Third, even if Plaintiffs' insurance policy had contained an "anti-concurrent-cause," under Texas law it would be the insurer's burden of proof to segregate out any uncovered losses.

23.     At first glance Defendant's position appears to be an attractive argument. Attractive but not the law. In support of its argument, Defendant cites Texas Pattern Jury Charge 101.57 for the proposition that Plaintiff must prove the "damages" were caused solely by the storm at issue in this case. Defendant misstates Texas Pattern Jury Charge 101.57. Texas Pattern Jury Charge 101.57 provides:

>    QUESTION _____

> Did *Insurer, Inc.* fail to comply with the agreement?
>
> *Insurer, Inc.* failed to comply with the agreement if it failed to pay for [*all*] the damages, if any, [*that were caused partly/solely) by/that resulted from/because of*] the [*description of covered loss, event, or cause*].
>
> {Insert instructions and definitions, if appropriate.]
>
> Answer "Yes" or "No."
>
> Answer: _____

TEXAS PATTERN JURY CHARGE 101.57.

24.     The comments to 101.57 go on to explain:

> **Causation.** Insurance policies may cover losses "caused by," "resulting from," or "because of" a covered event or some other causation standard. The causation language should be modified to conform to the policy.
>
> **"Partly" or "solely"--concurrent causation, separate and independent causation, and allocation.** Depending on the policy language, a loss may be covered if it is partially caused by a covered risk, even if damage was also caused by an excluded risk, to the extent the damage can be allocated between the causes. *See Utica National Insurance Co. of Texas v. American Indemnity Co.,* 141 S.W.3d 198, 204 (Tex. 2004). In cases involving separate and independent causation, the covered event and the excluded event each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion. *Utica National Insurance Co. of Texas,* 141 S.W.3d at 204. Under the concurrent causation doctrine, the excluded and covered events combine to cause the plaintiff's injuries. *Utica National Insurance Co. of Texas,* 141 S.W.3d at 204. Initially, the insured has the burden of pleading and proving facts that establish coverage under the terms of the policy. *Seger v. Yorkshire Insurance Co., Ltd.,* 503 S.W.3d 388, 400 (Tex. 2016); *JAW The Pointe, L.L.C. v. Lexington Insurance Co.,* 460 S.W.3d 597, 603 (Tex. 2015); *Utica National Insurance Co. of Texas,* 141 S.W.3d at 203. To avoid liability, the insurer then has the burden to plead and prove an exclusion, which is an affirmative defense. Tex. R. Civ. P. 94; Tex. Ins. Code § 554.002; *Seger,* 503 S.W.3d at 400; *Utica National Insurance Co. of Texas,* 141 S.W.3d at 204. To avoid coverage in situations involving multiple causes of liability or loss, the insurer may need to secure jury findings that determine the cause of the liability or loss, whether the liability or loss was caused solely by the excluded risk, or segregate the liability or loss caused by the insured peril from that caused by an excluded peril. *Utica National Insurance Co. of Texas,* 141 S.W.3d at 204. Proof of an affirmative defense includes proof of the extent of the defense. *See, e.g.,* PJC 115.8; *Cocke v. White,* 697 S.W.2d 739, 744 (Tex. App.-Corpus Christi 1985, writ ref'd n.r.e.); *R.A. Corbett Transport, Inc. v. Oden,* 678 S.W.2d 172, 176 (Tex. App.- Tyler 1984 , no writ); *Copenhaver v Berryman,* 602 S.W.2d

> 540,544 (Tex. Civ. App.-Cor- pus Christi 1980, writ ref'd n.r.e.). *Cf Lyons v. Millers Casualty Insurance Co. of Texas,* 866 S.W.2d 597, 601 (Tex. 1993) (involving a case arising prior to the adoption of Tex. Ins. Code § 554.002 and holding that "[w]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage."). PJC IO1.58 allocates damages by asking the amount of damage caused by the covered peril and instructing the jury not to consider damage caused by an excluded peril.
>
>   If there is no question of covered versus excluded causes, it is unnecessary to include the words "partly" or "solely."
>
>   In other cases, policy language may provide that a loss is covered only if it is caused solely by a covered risk, exclusive of all other causes. *See, e.g., Meyer,* 502 S.W.2d at 677-79 (coverage for death resulting from bodily injury independent of all other causes); *JAW The Pointe, L.L.C.,* 460 S.W.3d at 608 (anti-concurrent-causation clause bars recovery where loss is concurrently caused by both covered and uncovered perils). In such a case the word "solely" should be included in the question and "partly" should not. In other cases, even an excluded loss may be covered to the extent that an exception to the exclusion reflected in the policy applies and reinstates coverage to the extent of that exception. In such a case, the insured bears the burden to prove the existence and extent of application of the exception to the exclusion. *Telepak,* 887 S.W.2d at 507-0 8.

TEXAS PATTERN JURY CHARGE 101.57 comment.

25.    First, neither the facts of this case nor Defendant's questions to Sandlin establish a "concurrent cause." A concurrent cause is when two events combine to cause the plaintiff's injuries. *Utica Nat'l Ins. Co. v. American Ind. Co.*, 141 S.W.3d 198, 204 (Tex. 2004). For example, in a hurricane where there is the loss to a property that is caused by both wind (a covered peril) and flooding (a noncovered peril). In such a case, there are two perils causing the loss at the same time. The present case, does not factually involve a "concurrent cause." Defendant argues that because when Sandlin was asked whether it was "possible" a hail storm years earlier had caused some damage to the roof, Sandlin testified "it was possible" that Sandlin's testimony is unreliable. This testimony does not establish the possibility of a "concurrent cause" of the loss caused by the hail and wind storm in question. Quite frankly, it is possible every roof in North Texas has some hail damage to it in the last ten years. That does not make the prior hail damage, no matter how insignificant, the cause of the loss in question.

26. But taking Defendant's argument and assuming that wear and tear and the possibility of prior damage, no matter how insignificant, amounts to a "concurrent cause" in Texas. Defendant appears to argue a causation standard for an insurance policy that has an "anti-concurrent-causation" clause. As the Texas Supreme Court explained in *JAW The Pointe, L.L.C.,* 406 S.W.3d 597, 603 (Tex. 2015), when an insurance policy contains an "anti-concurrent-causation" clause, recovery is barred where the loss is concurrently caused by both covered and uncovered perils. In such cases the word "solely" should be included in the Pattern Jury Charge question regarding causation. *See* TEXAS PATTERN JURY CHARGE 101.57 comment.

27. Defendant has not asserted, nor is there, an "anti-concurrent-cause" clause in the insurance policy at issue. But, to address Defendant's argument, if we assume that there was a noncovered peril that was a "concurrent cause" of the loss on the date in question, if we pretend the insurance policy between Plaintiffs and Defendant contained an "anti-concurrent-cause clause," then it would still be Defendant's burden of proof to segregate the damage caused by the noncovered peril. *Utica Nat'l Ins. Co.*, 141 S.W.3d at 204.

28. Defendant attempts to shift the burden of proof of segregating between covered losses and uncovered losses to Plaintiff. To avoid coverage in claims involving more than one cause of the liability it is the insurer's burden to secure a finding that the injury was caused "solely" by an excluded risk. *Utica National Ins. Co. of Texas*, 141 S.W. 3d 198, 204 (Tex. 2004). Proof of an affirmative defense such as the injury being caused by an excluded peril also includes proof of the extent of the defense. *See* TEX. INS. CODE §554.002; TEXAS PATTERN JURY CHARGE 101.57 comment.

29. The insurance policy in this case provides under the Building and Personal Property Coverage Form that:

      A.    Coverage

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations **caused by** <u>or</u> **resulting from** any Covered Cause of Loss

30.     Plaintiffs are not required to prove that the roof did not have wear and tear at the time of the hail storm. Plaintiffs are required to prove that there was a "physical loss or damage to the Covered Property . . . . caused by or resulting from any Covered Cause of Loss." (See Ex A-1 to Defendant's Motion for Summary Judgment)

31.     Under the terms of the insurance contract at issue, Plaintiffs are not required to prove that the hail and wind storm in question was the "sole cause" of any damage to the roof. Neither is it Plaintiffs' burden to prove that the roof already had damage caused by an excluded act. Sandlin has indeed testified that there was a "possibility" that a prior hail storm could have caused some damage to the roof. (APP 5). However, it is Sandlin's expert opinion that the storm in question is what requires the roof to be replaced. The need to replace the roof resulted from the covered peril. (APP 5)

32.     Defendant's argument is akin to arguing that a medical provider that testifies that a plaintiff required surgery as the result of a neck injury suffered when an 18-wheeler slammed into her car is not able to testify if the medical expert testifies that it is a possibility that plaintiff had a weakened neck before being hit by the 18-wheeler. Also, the medical provider testifies that because the plaintiff was fifty (50) years old, the plaintiff's neck possibly had some wear and tear on it.

33.     Thus, Defendant attempts to improperly shift the burden of proof in this case to Sandlin and then moves to strike Sandlin's testimony for failing to meet the insurer's burden of proof. If this is the standard for determining the reliability of expert testimony regarding hail and wind storm damage to roofs in Texas, then there is no such thing as reliable testimony on the issue.

### C. Keith Kaley

34. Defendant moves to strike Kaley from providing any expert testimony. Keith Kaley is a roofer that was hired by the Plaintiff to perform repairs and/or replace the roof on the insured property. Kaley was not hired by Counsel as an expert witness nor has Kaley been retained to provide expert testimony. Kaley is a fact witness that also may provide testimony that is expert in nature. In other words, Plaintiffs have no control over Kaley to require him to take the time to write a report or require him to give a deposition. Plaintiffs or Defendants may subpoena Kaley to testify at a deposition or trial. Plaintiffs have identified Kaley as a person that may give expert opinions in the event Kaley is indeed subpoenaed to provide testimony. As a non-retained expert witness, no report is required. FED. R. CIV. P. 26(a)(2)(B).

### CONCLUSION

35. The Court should not strike the testimony of Sandlin because Sandlin is operating under a state approved contract for the underlying insurance claim. Sandlin does not have any interest in the litigation only in the underlying insurance claim. Sandlin's testimony is not unreliable because Sandlin testified that roof may have "possibly" suffered some damage in a prior hail storm years ago or because the roof had wear and tear. That is not the standard in Texas for reliability of an expert on a roof claim. Sandlin's failure to segregate out a "possibility" of wear and tear or pre-existing minor damage is not the appropriate requirement in Texas. This is not a "concurrent cause" case. Nor does the insurance policy contain an "anti-concurrent-cause" clause. Nor is it Plaintiffs' burden to segregate out a noncovered "concurrent cause." Further, the Court should not strike Kaley as providing expert testimony, for failing to provide a report if he is subpoenaed by Plaintiffs or Defendant to testify.


Respectfully submitted,

**BERGMANGRAY LLP**

*/s/ Jay K. Gray*

Jay K. Gray
State Bar No. 08324050
Andrew A. Bergman
State Bar No. 02196300
4514 Travis Street
Travis Walk, Suite 300
Dallas, Texas 75205
214-528-2444
214-599-0602 [fax]
gray@bergmangray.com
bergman@abergmanlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

      This will certify that a true and correct copy of the foregoing *Plaintiffs' Brief in Support of Response to Defendant's Motion to Strike the Testimony of Plaintiffs' Designated Experts Brady Sandlin and Keith Kaley* was served via ECFM on this 19th day of October 2020 upon counsel of record in accordance with the FEDERAL RULES OF CIVIL PROCEDURE.

Mark D. Tillman
Michael C. Diksa
TILLMAN BATCHELOR LLP
5605 N. MacArthur Blvd., Suite 560
Irving, Texas 75038
Telephone: (214) 492-5720
Facsimile: (214) 492-5721
mark.tillman@tb-llp.com
mike.diksa@tb-llp.com
**ATTORNEYS FOR
OHIO SECURITY INSURANCE CO.**

                                                                       */s/ Jay K. Gray*