UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRYMIRE HOME SERVICES, INC. and WHITFIELD CAPITAL, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-1938-B |
| OHIO SECURITY INSURANCE CO., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ohio Insurance Company's Motion for Summary Judgment (Doc. 34), Motion to Strike (Doc. 31), and Supplemental Motion to Strike (Doc. 52). For the reasons set forth below, the Court **GRANTS** Defendant's summary-judgment motion and **DENIES** Defendant's motions to strike as **MOOT**.

### I.
### BACKGROUND

This is an insurance dispute about hailstorm damage. Plaintiffs Whitfield Capital, LLC and Frymire Home Services, Inc. obtained a policy from Defendant insuring a commercial office building ("the Property"). Doc. 36, Def.'s App., 13–17, 25.[1] The policy insures against loss and damage to the

---

[1] Though an adjacent warehouse is located on the same property, Defendant asserts that the policy did not insure the warehouse. Doc. 35, Def.'s Mot., 4 n.4. In their complaint, Plaintiffs argue the warehouse is subject to coverage, *see* Doc. 18, Am. Compl., ¶¶ 15, 25, but Plaintiffs make no mention of the warehouse-coverage issue in their response. *See generally* Doc. 44, Pls.' Resp. Because the parties' briefing pertains to the commercial building, the Court focuses on the coverage of the commercial building—not the warehouse. Accordingly, as used throughout this Order, the term "the Property" refers only to the commercial building.

Property occurring within the policy period, *id.* at 167, so long as the loss is not subject to an exclusion such as "[w]ear and tear" or inadequate maintenance. *Id.* at 177, 179, 181. The policy was in effect from March 23, 2018, until March 23, 2019. *Id.* at 6.

In 2017, and thus prior to the start of the policy period, the Property was appraised in connection with bankruptcy proceedings of the Property's prior owner. Doc. 39, Def.'s Suppl. App., 593. The appraisal report relied upon a report from Partner Engineering and Science, Inc. ("Partner"), *id.*, which assessed the condition of the Property in 2017. *Id.* at 709. In its report, Partner noted that the roof of the Property "appeared to be in fair overall condition" and contained "[t]wo areas of significant roof leaks[.]" *Id.* at 718. Partner recommended "[i]mmediate repair" of these areas. *Id.* Further, Partner recommended that the roof of the Property be replaced within two years. *See id.* at 706.

Plaintiffs allege that in June 2018, a severe thunderstorm producing hail damaged the Property. Doc. 35, Def.'s Br., 7 (citing Doc. 18, Am. Compl., ¶ 14). Consequently, Plaintiffs' insurance agent submitted a claim to Defendant based on the damage. *Id.* at 7–8 (citing Doc. 18, Am. Compl., ¶ 16). Thereafter, Defendant's adjuster, Marques Alex, inspected the Property, Doc. 38, Def.'s Suppl. App., 404–05, and Plaintiffs retained Brady Sandlin, a public adjuster, to inspect the Property. *See id.* at 406.

Subsequently, Alex, Sandlin, Plaintiffs' roofer, and a representative from Haag Engineering, a company retained by Alex, inspected the Property. *Id.* at 411. Based on the inspection, Sandlin concluded that the roof "sustained direct physical damage from hail stone and wind-blown debris impact" that necessitated repair or replacement of the roof. Doc. 42, Pls.' App., 5. He acknowledged that "[a]t the time" of the June 2018 storm, "the roof may have possibly had some damage to it from

a prior windstorm," but he nonetheless concluded that "it was the [June 2018 storm] that caused the damage that require[d] the roof to be replaced." *Id.*

In contrast, Haag's representative, relying upon the inspection and laboratory testing, concluded that hail did not cause damage to the asphalt roof surface of the Property. *See* Doc. 38, Def.'s Suppl. App., 417. Additionally, Haag's representative noted that "there were no reports [of hail] in the vicinity" of the Property between January 1, 2017, and November 30, 2018, aside from one instance of hailstones ten miles from the Property in April 2017. *Id.* at 412.

Based on Alex's and Haag's inspections, Defendant denied Plaintiffs' claim for coverage. *Id.* at 575. Plaintiffs then filed an action against Defendant in state court, which was subsequently removed. *See* Doc. 1, Notice of Removal, 1. In Plaintiffs' operative complaint, they bring claims against Defendant for: (1) breach of contract; (2) negligent or intentional misrepresentation; (3) Texas Insurance Code (TIC) violations; (4) Texas Deceptive Trade Practices Act (DTPA) violations; and (5) breach of the duty of good faith and fair dealing. Doc. 18, Am. Compl., ¶¶ 30–68.

Defendant filed a motion for summary judgment on all claims (Doc. 34), as well as two motions to strike Plaintiffs' experts (Docs. 31 and 52). As the Court has received all briefing necessary for resolving these motions, it analyzes them below.[2]

---

[2] The summary-judgment motion, as well as the first motion to strike, is fully briefed. Although the Court has not received a response and reply brief regarding Defendant's supplemental motion to strike, the Court nonetheless disposes of the motion in this Order because, as explained below, the Court's summary-judgment ruling renders the supplemental motion to strike moot.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the summary-judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting an essential element of the non-movant's claim. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 n.10 (5th Cir. 2017).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing

-4-

that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quotation marks omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary[-]judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated) (quotations marks omitted). But the court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation and quotation marks omitted). If the non-movant is unable to make the required showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

A. *The Court Grants Summary Judgment in Favor of Defendant on Plaintiffs' Breach-of-Contract Claim Because Plaintiffs Do Not Provide Evidence to Segregate Damages.*

Defendant seeks summary judgment on Plaintiffs' breach-of-contract claim based on Plaintiffs' failure to satisfy their burden of segregating damages based on covered and uncovered losses under the policy. Doc. 35, Def.'s Mot., 11. Plaintiffs, however, contend that the burden is on Defendant, as the insurer, to segregate the losses. Doc. 44, Pls.' Resp., 3 (citation omitted).

The Court agrees with Defendant. "An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy." *Emps. Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988) (citations omitted). To be sure, an insured that suffers damage from both covered and excluded perils is not precluded from recovering for the covered loss, but "[w]hen covered and excluded perils combine to cause an injury, the insured must present some

evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons v. Miller Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993) (citation omitted). "[T]he burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." *One Way Invs., Inc. v. Century Sur. Co.*, 2016 WL 5122124, at *2 (N.D. Tex. Sept. 21, 2016) (citation omitted). "If the insured falls short of meeting this burden, the insurer is entitled to summary judgment." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (citations omitted).

In contesting their burden to segregate damages, Plaintiffs do not grapple with applicable case law. Rather, they contend that to recover on their claim, they need not prove that the June 2018 storm was the "sole cause" of the damage at issue. Doc. 44, Pls.' Resp., 5. But this argument misses the point: Defendant offers evidence that the Property incurred damage prior to the policy period, meaning such damage would be a non-covered loss under the policy. *See* Doc. 36, Def.'s App., 13 (stating a policy period of March 23, 2018, to March 23, 2019), 167 (stating that the policy covers losses sustained during the policy period); Doc. 39, Def.'s Suppl. App., 717–18 (noting, in a 2017 report, "significant roof leaks" and recommending "[i]mmediate repair"). Consequently, under Texas law, Plaintiffs have the burden of providing "some evidence" permitting a fact finder to distinguish between damages arising prior to the June 2018 storm and those arising as a result of the June 2018 storm. *Certain Underwriters*, 892 F.3d at 170 (citations omitted).

Plaintiffs have not done so. Despite acknowledging that "the roof may have possibly had some [preexisting] damage" when the June 2018 storm occurred, Plaintiffs fail to submit any evidence enabling a jury to estimate the amount of damage caused by the June 2018 storm versus a non-covered loss. In their response, Plaintiffs cite a declaration from their adjuster, Sandlin, who

states: "At the time the hail and wind storm occurred on June 6, 2018, the roof may have possibly had some damage from a prior windstorm[,] but it was the hail and wind storm on June 6, 2018, that caused the damage that requires the roof to be replaced." Doc. 45, Pls.' App., 5. However, even assuming Sandlin's testimony is admissible,[3] it is not evidence permitting a jury to allocate damages between the June 2018 storm and preexisting damage. Rather, in a conclusory fashion, Sandlin attempts to both acknowledge damage from other causes and assert, without any explanation, that the June 2018 storm exclusively caused the damage resulting in Plaintiffs' losses. Aside from Sandlin's declaration, Plaintiffs do not offer any evidence pertaining to the segregation of damages. *See generally* Doc. 44, Pls.' Resp. Accordingly, they have not met their burden, and the Court **GRANTS** summary judgment in favor of Defendant on the breach-of-contract claim.

B.    *The Court Grants Summary Judgment in Defendant's Favor on Plaintiffs' Intentional-Misrepresentation Claim.*

Defendant moves for summary judgment on Plaintiffs' intentional-misrepresentation claim based on Plaintiffs' lack of evidence to support the claim. Doc. 35, Def.'s Mot., 20. Under Texas law, a claim for intentional misrepresentation requires the plaintiff to prove, among other elements, a misrepresentation and the plaintiff's reliance upon that misrepresentation. *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (citations omitted) (applying Texas law). Further, because intentional-misrepresentation claims sound in fraud, they are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard: the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the

---

[3] As discussed below, Defendant moves to exclude Sandlin from testifying as an expert. *See infra* at 9.

statements were fraudulent." *Hamilton Props. v. Am. Ins. Co.*, 2014 WL 3055801, at *14 (N.D. Tex. July 7, 2014) (quoting *Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).

Plaintiffs offer no evidence of a misrepresentation or reliance—indeed, Plaintiffs do not even address the merits of the misrepresentation claim in their response. *See generally* Doc. 44, Pls.' Resp. As a result, Defendant has met its burden of demonstrating an absence of evidence to support Plaintiffs' intentional-misrepresentation claim, and the Court **GRANTS** summary judgment in favor of Defendant on the claim.

C.   *The Court Grants Defendant Summary Judgment on Plaintiffs' Remaining Extracontractual Claims Because Plaintiffs Do Not Claim an Independent Injury.*

As Plaintiffs acknowledge, *see* Doc. 44, Pls.' Resp., 7, their remaining claims "are based on unpaid coverage benefits rather than some other, independent injury." *Certain Underwriters*, 892 F.3d 172. As a result, all of Plaintiffs' remaining claims—breach of the duty of good faith and fair dealing, TIC violations, DTPA violations, and negligent misrepresentation—fail along with Plaintiffs' breach-of-contract claim. *See id.* (dismissing TIC claims for lack of independent injury (citing *USAA Tex. Lloyd's Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018)); *Hamilton Props.*, 2014 WL 3055801, at *12 (dismissing claims for breach of the duty of good faith and fair dealing, DTPA violations, and TIC violations based on the lack of independent injury), *aff'd*, 643 F. App'x 437, 442 (5th Cir. 2016); *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (per curiam) (holding the plaintiff could not recover for negligent misrepresentation due to its failure to allege an injury independent of contract damages).

Thus, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiffs' bad-faith

claim, TIC claims, DTPA claims, and negligent-misrepresentation claim.

D.  *Because the Court Grants Summary Judgment in Favor of Defendant, the Court Denies Defendant's Motions to Strike as Moot.*

After the close of discovery, Defendant moved to strike two of Plaintiffs' designated experts: Brady Sandlin and Keith Kaley. *See generally* Doc. 31, Def.'s Mot.; Doc. 52, Def.'s Suppl. Mot. Because neither expert's testimony created a genuine fact issue on any of Plaintiffs' claims, the Court **DENIES** Defendant's motions to strike as **MOOT**.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment (Doc. 34) on all of Plaintiffs' claims and **DENIES** Defendant's motions to strike (Docs. 31 and 52) as **MOOT**.

**SO ORDERED.**

**SIGNED: December 10, 2020.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE